Case 11-62167   Doc 16   Page 1 of 4

FILED
November 11, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003895502

4

T. SCOTT BELDEN, CSB NO. 184387
JACOB L. EATON, CSB NO. 244834
KLEIN, DENATALE, GOLDNER,
 COOPER, ROSENLIEB & KIMBALL, LLP
4550 California Avenue, Second Floor
Bakersfield, California 93309
Telephone: (661) 395-1000
Facsimile: (661) 326-0418
E-Mail: sbelden@kleinlaw.com; jeaton@kleinlaw.com

Proposed Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| In re:                      | Case No.  11-62167-B-11 |
|-----------------------------|-------------------------|
| STOCKDALE TOWER 1, LLC,     | Chapter  11             |
| Debtor.                     | DC No.  KDG-1           |
|                             | Emergency Hearing Date: November 16, 2011
Emergency Hearing Time:    9:00 a.m.
Final Hearing Date:  To be determined
Final Hearing Time: To be determined
Place:    U.S. Bankruptcy Court
          2500 Tulare Street, Dept. B
          Courtroom 12, Fifth Floor
          Fresno, California
Judge:    Honorable W. Richard Lee |

**EMERGENCY MOTION FOR ORDER AUTHORIZING
USE OF CASH COLLATERAL IN ORDINARY COURSE OF BUSINESS**

TO THE HONORABLE W. RICHARD LEE, UNITED STATES BANKRUPTCY JUDGE:

STOCKDALE TOWER 1, LLC ("Debtor") moves the Bankruptcy Court on an emergency basis for an order authorizing the use of cash collateral in the ordinary course of business, and represent as follows:

**I.      Background of Debtor and events leading up to filing Chapter 11**

1.      Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code November 7, 2011.

/ / /

2. Debtor's primary source of income is generated by rental income from a 12-story office building located at 5060 California Avenue, Bakersfield, California commonly known as the Stockdale Tower ("the Tower").

3. Debtor has owned and operated the Tower since 2002. Debtor was forced to default on its loan payment to LNR Partners, LLC when several tenants of the Tower vacated their office space in the Tower and as a result of the poor economy. Debtor filed its Chapter 11 case to stop a foreclosure sale of the Tower that was set for November 8, 2011 and to reorganize its business and financial affairs. Debtor intends to restructure its debts and repay creditors through its Chapter 11 case.

## II. Liens against the Tower

4. The Tower is impaired by a first deed of trust and assignment of rents dated August 3, 2004, held by LBUS 2004-C6 Stockdale Office Limited Partnership ("LBUS"), as successor to UBS Real Estate Investments, Inc. On the petition date, the indebtedness to LBUS was alleged to be about $29 million by LBUS.

5. The Tower may be impaired by a second deed of trust dated April 13, 2009, held by Randy and Mary Molina.

6. The Tower is impaired by a Notice of Non-Payment of Common Area Maintenance Expenses filed by Ashoka Malladi Reddy. However, Debtor does not believe that his notice of non-payment creates a lien against Debtor's cash collateral.

## III. Debtor's Need for Use of Asserted Cash Collateral.

7. Debtor requires the use of (a) cash on hand and (b) the rents it receives from the Tower (collectively "the Future Rents"), beginning on November 7, 2011. Debtor requires the use of the Future Rents to pay expenses associated with the Tower and other necessary expenses as more particularly described in the Declaration of Terry Moreland filed concurrently with this Motion.

8. LBUS will assert that the Future Rents are its Cash Collateral. However, Debtor has no ready source of cash at this time to pay its on-going business expenses except for the Future Rents. Thus, Debtor's use of the Future Rents is critical to Debtor's continued operation

of the Tower while it reorganizes and formulates a Plan of Reorganization.

9. A debtor should be permitted to use cash collateral where the debtor provides a secured creditor with adequate protection of the secured creditor's interest. 11 U.S.C. Section 363(c)(2)(B) & (e); *In re Inforex, Inc.*, 10 B.R. 497, 499 (Bankr. Mass. 1979). This is true because a debtor attempting to rehabilitate a business has a compelling need to use cash collateral in its effort to reorganize. *In re George Ruggiere Chrysler Plymouth*, 727 F.2d 1017, 1019 (11th Cir. 1984). Without the availability of cash to meet daily operating expenses such as rent, payroll, and utilities, the congressional policy favoring rehabilitation over economic failure would be frustrated. *Id.*

10. "Adequate protection" is not defined in the Bankruptcy Code. However, a determination of the value of the interest held by a secured creditor and a determination of whether a proposed use of cash collateral threatens that value must be made in determining whether a secured creditor's interest is adequately protected. *In re George Ruggieve Chrysler Plymouth, supra*, at 1019; *In re Karl a Neise, Inc.*, 16 B.R. 600, 601 (Bankr. S.D. Fla. 1981). Additionally, the value of a security interest for purposes of determining "adequate protection" is the amount of the secured claim or the value of the collateral. *In re George Ruggieve Chrysler Plymouth, supra*, at 1019. *See also LaJolla Mortg. Fund vs. Rancho El Cajon, Inc.*, 18 B.R. 283, 286 (Bankr. S.D. Cal. 1982) and 11 U.S.C. § 506(a).

11. The Tower is worth about $18,000,000.00 per Debtor's opinion of value and the claim held by LBUS secured by the first deed of trust against the Tower is alleged to be about $29,000,000.00 on the petition date by LBUS. This is subject to ongoing review and may be revised in light of recent property value fluctuations. Debtor believes, however, that LBUS's interest will be adequately protected during the period of emergency use of cash collateral by virtue of the fact that the Future Rents will be used to maintain the Property.

12. Nevertheless, Debtor is prepared to offer adequate protection to LBUS following November 2011. Debtor believes that it will be able to generate a profit that can be used to fund a Plan of Reorganization if it is able to (a) use the Future Rents and (b) continue operating the Property in the ordinary course of business.

13. Weekly Budgets for the period November 7, 2011 through December 4, 2011, describing Debtor's income and expenses that must be paid is attached as Exhibit "A" to the Exhibits ("the Budgets"). Debtor should be allowed to use the Future Rents consistent with the Budgets with a 10% variance for the reasons given above.

14. Because of the immediate need for use of money and to avoid irreparable harm, Debtor requests that it be allowed to use the Future Rents as described herein. Debtor anticipates the rents received from the Property will total approximately $168,391.00 for the period from November 7, 2011 though December 4, 2011. Debtor seeks to use the rents received from the Tower during this period to meet critical expenses. This includes necessary expenses to insure, maintain, and care for the Tower for that period as described in the Declaration of Terry Moreland filed in support of this Motion.

15. The expenses identified in the Budgets are required to be paid during the referenced timeframes to avoid irreparable harm to the Debtor and the estate. Insurance, utilities, and the other payments listed are critical to Debtor's operation of the Tower. Therefore, Debtor requests that it be authorized to use Cash Collateral in the amounts noted in the Budget, with a ten percent variance. *See* F.R.B.P. 4001(b)(2).

WHEREFORE, Debtor prays that the Court make and enter its order as follows:

1. The *Emergency Motion for Order Authorizing Use of Cash Collateral in Ordinary Course of Business* be granted on an interim basis;

2. Debtor be authorized to use the Future Rents in the amounts set forth in the Budget attached to the Exhibits with an allowed ten percent (10%) variance;

3. The Court schedule a final hearing; and

4. For such other relief as the court deems just and proper.

Date: November 10, 2011

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP

By _____
T. SCOTT BELDEN
JACOB L. EATON
Proposed Attorneys for Debtor

3611591.DOC     4